Filed 8/18/21  P. v. Allen CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JOHN RANDALL ALLEN,<br><br>  Defendant and Appellant. | H047429<br>(Santa Clara County<br> Super. Ct. No. C1881085) |

Defendant John Randall Allen pleaded no contest to rape (count 1; Pen. Code, § 261, subd. (a)(2)) and infliction of corporal injury on a cohabitant (count 2; Pen. Code, § 273.5, subd. (a)).  The trial court committed defendant to state prison for a total stipulated term of four years.  Defendant timely appealed and obtained a certificate of probable cause.  Appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 on behalf of defendant.  We find no arguable issues and affirm the judgment.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 30, 2017, Santa Clara County Sheriff's deputies responded to a report of a rape at Valley Medical Center.  The victim reported she had been raped by defendant, who was her ex-boyfriend.  The victim reported that defendant had arrived at her recreational vehicle trailer uninvited and approached her while she was lying in her bed.  Defendant accused the victim of cheating on him.  He got into the victim's bed and straddled her, using his body weight to pin her down.  He hit her on her head.  Defendant

then pulled the victim's pants down and penetrated her vagina with his hand. Shortly thereafter, he inserted his penis and proceeded to rape the victim for approximately five minutes. The victim's 18-year-old autistic daughter was present at the scene. The victim was left with multiple bruises and lacerations. She was later examined by a Sexual Assault Response Team (SART) nurse, who determined that her injuries were consistent with her report that she had been raped.

In January 2018, the Santa Clara District Attorney filed a complaint charging defendant with rape and infliction of corporal injury on a cohabitant.

## A.      First Motion to Replace Appointed Counsel

Prior to the preliminary examination, defendant moved to replace appointed counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). Defendant indicated he believed there was a conflict of interest and a lack of communication. Appointed counsel had been assigned to the case recently to replace the prior deputy public defender. Defendant stated that counsel had only visited him twice, did not bring notes of what had been discussed with prior counsel, and was unable to answer questions about a video and phone records that defendant wanted subpoenaed. Defendant felt that counsel was unprepared. Defendant also felt that counsel was not ready for the preliminary hearing, and he was upset he did not have an opportunity to make suggestions about the defense of his case.

Counsel disagreed with defendant's characterization of his preparation for the preliminary hearing. According to counsel, he met with defendant for approximately 1.5 hours during their first meeting. He intentionally left the case file at his office because he had already reviewed it. His intent at the first meeting was to "just . . . hear [defendant's] version of events." He had already subpoenaed and received the phone records about which defendant was concerned. Counsel stated that he had a second meeting with defendant, which also lasted approximately 1.5 hours, during which he again asked "for [defendant's] version of events . . . I just wanted full context." By then,

2

counsel "had already reviewed his discovery," "had watched the videos," and "had watched the body worn camera," so he "didn't need [defendant's] take on the discovery." Counsel stated that he reviewed "all of the notes" that defendant provided prior counsel and "every single piece of paper in his file." Counsel noted that defendant had informed him he wanted to call witnesses to establish that the victim had numerous prior relationships, but counsel had told defendant that such witnesses were not called at a preliminary hearing. Counsel stated that he had contacted "every witness" except for one that defendant had identified and had obtained statements from them. Counsel also stated that he had spoken to the prosecutor and had been informed "that this case will not resolve for a [domestic violence] charge" as defendant wanted because the prosecutor was "very firm" on not dropping the rape charge. Finally, counsel related that he told defendant "that in my opinion there's uncharged conduct" in this case and "after a preliminary hearing the [prosecutor] can add charges."

The trial court concluded that there had not been a breakdown in the attorney-client relationship and denied the motion.

### B. Change of Plea

Prior to the start of the preliminary hearing, defendant entered into a plea agreement in which he stipulated that he was pleading no contest to both counts in exchange for a four-year prison term. Both the prosecutor and defense counsel stipulated to a factual basis for the pleas. Defendant affirmed that he was not under the influence of any drugs, alcohol, or medication that would affect his ability to understand the proceedings. Defendant affirmed that he had had sufficient time to consider the felony waiver form with his attorney, that if he had any questions he had asked those questions, and that he was given satisfactory answers. Defendant confirmed that he had initialed and signed the felony waiver form, that when he did so he understood the contents of the form, and that it was his intent to waive those rights. Defendant pleaded no contest to both counts. Before entering the plea, the trial court asked defendant if he had any

3

questions or concerns or needed any clarification about the proceedings. Defendant stated he did not. Having found that the plea was knowing and voluntary, that defendant was aware of the charges and possible defenses, and that there was a factual basis, the court entered the plea.

### C.     Second Motion to Replace Appointed Counsel

Before sentencing, defendant again moved to replace appointed counsel.[1] At the hearing, defendant stated that there was a lack of communication and that counsel "had no notes from my prior attorney." He also asserted that counsel failed to "come see me and make a game plan" prior to the preliminary hearing. Defendant felt that counsel was not prepared for the preliminary hearing. Defendant then accused counsel of being "in contact with my brother" "about the case without me knowing it." Defendant also recounted that, one to two weeks after the change of plea hearing, counsel came to him to ask "how [defendant] was doing." "[Defendant] said 'How do you think I'm doing? I just took a plea and I'm innocent and I'm out of my mind. And I want you to get me out of this, and I want you to back off. You're worthless.' " Defendant again raised the issue of the witnesses he wanted to interview, the phone records, and video recording. According to defendant, he asked his counsel to file a motion to withdraw the plea and counsel failed to do so. Finally, he accused his counsel of "threaten[ing] me with saying they're going to put a life sentence on me and this and that, and if you don't do this deal, then blah, blah, blah . . . ."

Counsel indicated that he visited defendant "five or six times," and on two occasions was turned away from visiting because the facility was in lockdown. Counsel stated he understood defendant's strategy, which was to "impeach the credibility of the victim, the witness in this case. And that was the plan." As to the phone records, counsel stated he had reviewed them and was prepared to question the victim about them. As for

---

[1] Defendant also moved to withdraw his plea, which will be discussed in further detail below.

the video, counsel stated it showed defendant and the victim on a shopping trip together, and "the complaining witness in this case doesn't deny" that the trip occurred. Counsel also reiterated that all the witnesses but one had been interviewed and had "provided information which [counsel] thought was favorable to [defendant's] case." Counsel stated he "absolutely went over witness statements with [defendant] about the witnesses he gave me." Counsel stated he had told defendant "that a life charge was being discussed . . . ." Counsel explained that the prosecutor had informed him "that she will not hesitate, if proven up at [the] preliminary hearing, to add a first degree burglary with the intent to commit a sexual crime." Counsel stated it was his "legal obligation to tell [defendant] those are possibilities at the preliminary hearing."

As to defendant's brother, counsel stated that defendant's brother called him "numerous times" and tried to contact counsel's supervisor. Counsel told the brother, " 'I can't talk to you about the case.' " Counsel admitted to making "small talk and jokes," but "[i]t was not case specific at all." Counsel made sure his supervisor also knew that defendant's brother was attempting to learn details about the case without defendant's permission. Finally, he informed defendant that he did not " 'see a legal basis [to withdraw his plea] based on everything I have in front of me.' " He told defendant that the " 'best vehicle' " to withdraw the plea would be to file a *Marsden* motion and motion to withdraw the plea. Counsel explained that he is "not here to stop [defendant] from withdrawing his plea," but that he did not see a legal basis to do so "short of an appeal," which he promised to file.

The court determined that counsel's representation of defendant "has been effective," and the court denied the motion to replace appointed counsel.

### D.    *Third Motion to Replace Appointed Counsel*

Later, defendant made another motion to replace appointed counsel. Defendant complained that no DNA test had been performed, which would "clear [defendant] of the rape." Defendant again mentioned the video recording and phone records. Defendant

5

asserted that the victim's Facebook page would show that she had made similar accusations against other men, and that she had a history of mental illness and lying. Defendant also reiterated that counsel had threatened him with additional charges, had done nothing to assist in defendant's case, and had failed to speak with witnesses.

Counsel explained that he had responded to most of the accusations at the last *Marsden* hearing. He also explained that a sexual assault expert had been retained, and after reviewing the evidence, the expert stated he would not be able to provide favorable testimony. Counsel reiterated that he had been prepared to cross-examine the victim on her history with men and about making similar accusations. As to the accusation that counsel did not speak to potential witnesses, counsel explained that attorneys do not personally interview witnesses because if they did there might be a potential conflict if the witness's trial testimony was inconsistent with his or her prior statement. Counsel again admitted to discussing the possibility of additional charges, explaining that he was obliged to inform defendant of the prosecutor's comments.

The trial court determined that counsel was prepared to represent defendant and that any deterioration in the attorney-client relationship was based on defendant's attitude. The court saw no reason "why in the future [defendant] and [counsel] cannot continue to work together on the issue of his sentencing." The court denied the motion to replace appointed counsel.

### E. *Motion to Withdraw Plea*

At the time of the second *Marsden* motion, defendant also moved to withdraw the plea. Defendant stated that he felt he was under duress, he was stressed out, and he was blackmailed into entering the plea agreement. Defendant added that he was told he had only 30 minutes to make his decision, but was later told he had until the following morning to do so. Defendant admitted he knew the agreement included a sentence of four years. He stated, however, that he was on suicide watch the night before. Defendant admitted he signed the plea waiver form and answered affirmatively to the court's

6

questions, but he claimed that he did so only because he was worried the plea deal would be withdrawn if he did not respond affirmatively. The court continued the hearing on the motion to withdraw the plea so that a transcript of the plea hearing could be prepared and so that medical records for defendant could be obtained.

At the continued hearing, defendant stated that he was under duress when he pleaded no contest because he had been told before the plea that he was facing a possible life sentence. He believed, based on conversations with prior counsel, that he would be able to plead to a domestic violence charge for a sentence of two to four years. When he learned that the prosecutor would not offer a domestic violence charge, defendant became stressed. Defendant stated that although he was allowed to think about the decision overnight, he "got bipolar, PTSD, bad, and I was out of my mind and I was in shock. I was not in the right mind."

The trial court denied defendant's motion to withdraw his plea. The court based its decision on the transcript of the hearing and its own recollections of the hearing. The court added that defendant's hearing stood out "because I have had you in front of me a number of times . . . ." The court noted that it had "rejected many pleas in the middle of it even if there is a slight hesitation on the part of the person who is entering a change of plea if I feel that they are under stress or duress or they are not even clear about what they want to do." Based on the court's evaluation of defendant when he changed his plea and the transcript of the hearing, the court found no legal basis for withdrawal of the plea.

### F. Sentencing

The trial court then imposed sentence on defendant consistent with the plea agreement—for count 1, three years, and for count 2, one year consecutive to count 1, for a total of four years. He was given credit for 622 days of actual time served, plus 93 days of conduct credit, for a total of 715 days of custody credit. The trial court waived all fines and fees based on an inability to pay, except for a $450 payment to the California Victim Compensation Board.

7

**II. DISCUSSION**

Appointed appellate counsel has filed an opening brief that states the case and the facts but raises no issues. Defendant was notified of his right to submit written argument on his own behalf on appeal. He has not done so. Having examined the entire record, we conclude that there are no arguable issues on appeal.

**III. DISPOSITION**

The judgment is affirmed.

                                    _____

                                    ELIA, ACTING P.J.

WE CONCUR:

_____

BAMATTRE-MANOUKIAN, J.

_____

DANNER, J.

*People v. Allen*
H047429